**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **SAFECAST LIMITED**,<br><br>    Plaintiff,<br><br>v.<br><br>**MICROSOFT CORPORATION**,<br><br>    Defendant. | No. 6:22-cv-00983-ADA-DTG |

**DEFENDANT MICROSOFT CORPORATION'S RULE 12(b)(6) MOTION TO DISMISS
<u>PLAINTIFF'S COMPLAINT</u>**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

STATEMENT OF RELEVANT FACTS ....................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.   LEGAL STANDARD ........................................................................................................ 3

II.  SAFECAST FAILS TO STATE A CLAIM FOR DIRECT INFRINGEMENT................... 3

  A.  SafeCast Fails to Sufficiently Plead that Xandr Includes "Programme Supply Means to Supply Broadcast Digital Video/Audio Programmes" ........................................ 4

  B.  SafeCast Fails to Sufficiently Plead that Xandr Automates Compliance with "Local Broadcasting Regulations"........................................................................................ 6

III. DISMISSAL WITH PREJUDICE IS WARRANTED AS ANY AMENDMENT WOULD BE FUTILE........................................................................................................ 10

CONCLUSION............................................................................................................................. 11

# **TABLE OF AUTHORITIES**

## **CASES**

*Ashcroft v. Iqbal,*
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ...................................................... 3, 7

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .......................................................... 3

*Bot M8 LLC v. Sony Corp. of Am.*,
  4 F.4th 1342 (Fed. Cir. 2021) ................................................................................................. 3, 6

*Burke v. Ocwen Loan Servicing, L.L.C.*,
  855 Fed. Appx. 180 (5th Cir. 2021) .......................................................................................... 10

*De La Vega v. Microsoft Corp.*,
  2020 U.S. Dist. LEXIS 116081 (W.D. Tex. Feb. 7, 2020) .......................................................... 9

*Mesa Digital, LLC v. Cellco P'ship d/b/a Verizon Wireless*,
  No. 6:21-cv-01020-ADA (W.D. Tex. July 26, 2022) ................................................................. 9

*Ruby Sands LLC v. Am. Nat'l Bank of Tex.*,
  2016 U.S. Dist. LEXIS 83897, 2016 WL 3542430 ..................................................... 3, 7, 9, 10

*Traxcell Tech. v. AT&T Corp.*,
  No. 2:17-cv-00718-RWS-RSP (E.D. Tex. Mar. 29, 2022) ....................................................... 10

*Valdez v. Victory Med. Ctr. Southcross*,
  No. SA-16-CA-1016-FB, 2016 U.S. Dist. LEXIS 202250 (W.D. Tex. Dec. 12, 2016) .......... 11

*Vervain, LLC v. Micron Tech., Inc.*,
  No. 6:21-cv-00487-ADA, 2022 U.S. Dist. LEXIS 54 (W.D. Tex. Jan. 3, 2022) ............... 3, 7, 9

## **MISCELLANEOUS**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................... 1, 9

**INTRODUCTION**

SafeCast Limited's ("SafeCast") complaint alleging direct infringement by Xandr, a platform acquired by Microsoft Corporation ("Microsoft"), should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) as much because of the allegations that SafeCast chose to omit from its pleadings, as the evidence that SafeCast chose to include.

The asserted patent, U.S. Patent No. 9,392,302 ("'302 patent"), claims "a system for automating compliance with local broadcasting regulations laid down by a broadcasting authority and applicable to advertisements," such as times during which certain ads cannot be shown. Dkt. 1-1, Ex. A ("'302 patent"), cl. 1. The claimed system comprises "programme supply means to supply broadcast digital/audio programmes." *Id.* SafeCast does not plead any federal, state, or local broadcasting authority, or any specific broadcasting regulations with which Xandr supposedly automates compliance. Instead, SafeCast generically references the existence of "online advertising self regulatory agencies." Logically and factually, SafeCast is unable to plausibly allege that the Xandr platform automates compliance with "local broadcasting regulations." Moreover, SafeCast conspicuously does not plead or cite evidence that Xandr actually broadcasts or supplies TV programming. Instead, SafeCast relies on a single, oblique quote, which undermines its conclusion that Xandr has the required "programme supply means."

SafeCast's failure to abide by the most basic requirements to adequately plead infringement by the Xandr platform comes despite ample opportunity to investigate the Xandr platform and ample access to information to make its facial case. Accordingly, Microsoft respectfully requests that SafeCast's complaint be dismissed with prejudice.

**STATEMENT OF RELEVANT FACTS**

SafeCast's complaint alleges that Microsoft, based on its acquisition of Xandr, directly infringes "at least claim 1 of the '302 patent," though it provides allegations of infringement by

1

the Xandr platform only with respect to claim 1 and, even then, only in an attached claim chart. Dkt. 1 ¶¶ 15, 17, 24; Dkt. 1-1, Ex. B ("Claim Chart"). The '302 patent's claims recite a "system for automating compliance with local broadcasting regulations laid down by a broadcasting authority." *See* '302 patent, cls. 1, 12. The claims also recite advertisements that each have an associated header with a field "related to a local broadcasting time regulation laid down by the broadcasting authority." *Id*. Claim 1 further requires "programme supply means to supply broadcast digital video/audio programmes." *See id.* cl. 1.

Nowhere does SafeCast allege that the Xandr platform is a broadcast, on-demand, or streaming TV service. Instead, SafeCast recognizes Xandr as a "data-enabled technology platform . . . connecting marketers and media owners through first-party, data-led advertising solutions across its network." Claim Chart at 1. Aside from one sentence that simply incorporates the claim language, SafeCast does not specifically allege that Microsoft's Xandr platform itself has a means to supply video/audio programs. *Id.* at 2 ("Microsoft offers various means to supply broadcasting digital video/audio programmes."). SafeCast's complaint also does not identify any "local broadcasting authority," nor any "local broadcasting time regulation" with which Xandr purportedly automates compliance. Instead, SafeCast's claim chart links to Xandr's website and alleges only that "Microsoft provides compliance with *various local broadcasting regulations*, including but not limited to, *online advertising self regulatory agencies*." Claim Chart at 1 (emphasis added). SafeCast does not provide any factual allegations to support this assertion, let alone identify any such "local broadcasting regulations" or "online advertising self regulatory agencies." *Id.*

## ARGUMENT

SafeCast's complaint should be dismissed under Rule 12(b)(6) because it fails to state a plausible claim for direct patent infringement.

I.   LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Allegations "merely consistent with" liability are insufficient. *See Twombly*, 550 U.S. at 557. To meet the plausibility standard, plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and its claim must be based on "more than a *sheer possibility*" of liability. *See Iqbal*, 556 U.S. at 678 (emphasis added).

In a complaint for patent infringement, a plaintiff must "explicitly plead facts to plausibly support" its assertions of direct infringement. *See Ruby Sands LLC v. Am. Nat'l Bank of Tex.*, No. 2:15-cv-1955-JRG, 2016 U.S. Dist. LEXIS 83897, at *11-12 (E.D. Tex. June 28, 2016). "A plaintiff is not required to plead infringement on an element-by-element basis," but "[t]here must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352-53 (Fed. Cir. 2021). A greater level of detail is required for elements that are material to practicing the asserted claim. *See id.* at 1353; *see also Vervain, LLC v. Micron Tech., Inc.*, No. 6:21-cv-00487-ADA, 2022 U.S. Dist. LEXIS 54, at *15, 26 (W.D. Tex. Jan. 3, 2022) (demanding more specificity in pleading for limitations that "lay at the point of novelty" or were critical to issuance of the patent).

II.   SAFECAST FAILS TO STATE A CLAIM FOR DIRECT INFRINGEMENT

In its complaint, SafeCast makes no attempt to support its claim of relief with sufficient factual content for multiple limitations. *See* Dkt. 1 ¶¶ 17, 21 (stating only that Microsoft "directly infringed . . . one or more claims . . . of the '302 patent" and that the Accused Products "are available . . . throughout the United States"). Instead, SafeCast entirely relies on the Claim Chart

attached to the complaint.  *See* Dkt. 1 ¶ 24; Claim Chart.  As discussed below, the Claim Chart's barebones allegations regarding the claimed "programme supply means" and "local broadcasting regulations" are insufficient and conflict with the other cited evidence.

### A. SafeCast Fails to Sufficiently Plead that Xandr Includes "Programme Supply Means to Supply Broadcast Digital Video/Audio Programmes"

Claim 1 of the '302 patent explicitly requires "programme supply means to supply broadcast digital video/audio programmes having therein periodic breaks for the insertion of advertisements."  *See* '302 patent, cl. 1.  Under any interpretation of the claim, an infringing system must have something to "supply broadcast digital video/audio programmes."

Conspicuously, SafeCast does not allege that the Xandr platform is a broadcast, on-demand, or streaming TV service, or that Xandr otherwise supplies broadcast digital video/audio programs.  Nor can it.  The most SafeCast offers is a conclusory allegation that parrots the "programme supply means" element of claim 1 (labeled by SafeCast as "[1b]"): "Microsoft offers various *means to supply broadcasting* [sic] *digital video/audio programmes*."  *See* Claim Chart at 2 (emphasis added).  The only factual assertion SafeCast offers for element [1b] is a quote taken from a November 2020 news post from the Xandr website naming a number of media owners that were participating in Xandr's platform:

> Xandr announced that AMC Networks, Disney and WarnerMedia were participating in automated audience-based selling through Invest TV. The addition of A+E Networks (A&E®; HISTORY®; Lifetime®) and Crown Media increases the number of available networks to buyers to fifty-two, with combined reach of 90% of U.S. TV-viewing households.

*Id.*  Identifying the media owners that participate in Xandr's platform is not evidence that *Xandr* supplies programming.  Rather, this quote highlighting the participation of others shows that Xandr *does not* satisfy this limitation.

The remainder of the Claim Chart evidences SafeCast's apparent recognition that Xandr is

a platform used to connect "marketers" and "media owners," who respectively (and separate from Xandr) supply advertising and programming. *See* Claim Chart at 1. For example, the Claim Chart includes the following descriptions of Xandr:

- "Xandr is a 'data-enabled *technology platform* with tools that help power a diverse ecosystem *connecting marketers and media owners* through first-party, data-led advertising solutions across its network'.";

- "Xandr 'empowers buyers to activate unique audiences to achieve unified reach *across today's biggest media owners* all through a streamlined, automated UI'.";

- "Xandr allows advertisers to build advertising campaigns that 'have run and are planned to run across *multiple TV programmers*, with buyers leveraging advanced audience segments built with Nielsen, Xandr Audience Segments and the buyer's first-party data'."

*See* Claim Chart at 1 (emphases added). Nowhere does SafeCast identify any part of the Xandr platform as the "means" that purportedly "supply broadcast digital video/audio programmes."

Moreover, the hyperlinks embedded in SafeCast's Claim Chart further confirm that Xandr's platforms are not broadcasting services, but instead platforms used by the advertisers and media companies supplying the content and advertising. *See, e.g.*, Claim Chart at 1 (citing https://www.bloomberg.com/news/articles/2021-12-21/at-t-sells-xandr-to-microsoft-in-retreat-from-digital-ad-market?leadSource=uverify%20wall) (describing Xandr's "marketplace for automated online advertising"); *id*. at 1 (citing https://www.xandr.com/news/xandrs-invest-tv-platform-gains-momentum/) (describing Xandr as "creating a better solution *for advertisers and media companies*," and Invest TV and Monetize as "strategic platforms" that "optimize media spend across screens for buyers and sellers alike") (emphasis added). The cited Xandr press release distinguishes advertisers and media companies from Xandr, which provides services to content

5

providers.  *See id.* at 1 (citing https://www.xandr.com/news/xandrs-invest-tv-platform-gains-momentum/) ("Xandr today announced growing engagement with its Invest TV platform by both advertisers and media companies, since its launch in March 2020.").  The press release further provides testimonials from Xandr's customers as to how such media networks utilize Xandr to "serve *our clients*" and how Xandr "complements our relentless focus on delivering on our . . . partners' goals by providing access to *our valuable audience* and *our premium content* . . . ."  *See id.* (emphasis added).

In short, if the Claim Chart's allegations suggest anything, it is the participants in Xandr's platform—not Xandr—that may supply video/audio programming.  Accordingly, SafeCast fails to "articulate why it is *plausible* that *the accused product* infringes the patent claim."  *Bot M8 LLC*, 4 F.4th at 1353 (emphasis added).

### B. SafeCast Fails to Sufficiently Plead that Xandr Automates Compliance with "Local Broadcasting Regulations"

*First*, for the reasons set forth above, there is no plausible allegation that Xandr's platforms supply any programming or constitute a broadcast or streaming service.  Thus, there is no plausible allegation that Xandr's platforms would be subject to, and automate compliance with, "local broadcasting regulations laid down by a broadcasting authority."

*Second*, SafeCast does not identify any federal, state, or local "regulation" or "authority" that applies to Xandr, or any specific broadcasting regulations.  Instead, SafeCast merely recites the claim limitation and points to undefined "online advertising self regulatory agencies."  *See* Claim Chart at 1 ("Microsoft provides compliance with various local broadcasting regulations . . .").  Indeed, a "self regulatory" organization cannot be an "authority" that lays down regulations.  Nor does SafeCast offer any factual allegations that even remotely suggest that Xandr's platform automates compliance with "local broadcasting regulations laid down by a broadcasting

6

authority."  Claim Chart at 1; *see also Ruby Sands LLC*, 2016 U.S. Dist. LEXIS 83897, at *11-12.  Such barebones allegations do not support a claim for direct infringement.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Vervain, LLC*, 2022 U.S. Dist. LEXIS 54, at *5 ("Under any standard . . . the complaint must support its entitlement to relief with 'factual content,' not just conclusory allegations that the accused product(s) meet every claim limitation.").

Moreover, the documents hyperlinked in the Claim Chart do not support SafeCast's claim of direct infringement.  Although SafeCast labels them "agencies," SafeCast links to a list of "online advertising self-regulatory *organizations*."  *See* Claim Chart at 1 (emphasis added) (citing webpage entitled "Online Advertising Self-Regulatory Organizations," available at https://docs.xandr.com/bundle/industry-reference/page/online-advertising-self-regulatory-organizations.html).  However, SafeCast provides no allegations or evidence explaining how those online groups can be a "broadcasting authority," particularly when Xandr does not "broadcast" at all.  Those "self-regulatory organizations" are non-governmental industry groups—not broadcasting authorities—who create their own standards and guidelines, not "local broadcasting regulations."  *See id.*  As the cited webpage itself describes, those organizations are "*independent bodies of experts and advertising technology professionals* that help to establish standards for quality and ethical conduct in the purchase, sale, and display of online advertising."  *Id.* (emphasis added).  The mere existence of those organizations does not show that Microsoft or Xandr "automates compliance" with any standards and guidelines they create.

Moreover, the cited organizations do not promulgate "local broadcasting regulations," as claimed.  '302 patent, cl.1.  For example, the Claim Chart cites a webpage referring to the IAB, but that organization develops standards with an "emphasis on education and awareness raising . .

7

. regarding the value of digital advertising" and "promot[ing] professional development and improved knowledge, skills, and expertise across the digital advertising and marketing industries." Claim Chart at 1 (citing webpage "Online Advertising Self-Regulatory Organizations"); *see also id.* (describing IAB Tech Lab as focusing on "solutions for brand safety and ad fraud; identity, data, and consumer privacy; ad experiences and measurement; and programmatic effectiveness"). As another example, the World Wide Web Consortium is described as "develop[ing] protocols and guidelines that ensure long-term growth for the Web." *See id.* SafeCast fails to explain how any of these activities constitute "local broadcasting regulations."

*Third*, SafeCast's complaint does not provide sufficient factual allegations that plausibly allege direct infringement of the "local broadcasting *time regulation*" limitation. Again, SafeCast's allegations for this limitation span one line. *See* Claim Chart at 1 (pleading generally that "Microsoft provides compliance with various local broadcasting regulations . . ."). SafeCast does not identify in its allegations any "local broadcasting time regulation" with which Xandr supposedly complies. *See id. generally* (referring repeatedly to general "regulations" and "local broadcasting regulations"). Nor are the referenced "online advertising self-regulatory organizations" described as promulgating any "local broadcasting time regulations." *See* Claim Chart at 1 (citing webpage https://docs.xandr.com/bundle/industry-reference/page/online-advertising-self-regulatory-organizations.html).

Further, SafeCast's reliance on non-governmental industry groups as "broadcasting authorit[ies]" contradicts the '302 patent's prosecution history. The applicant told the Examiner that "Applicant intended the term 'local broadcasting regulation' to refer to *regulations/laws/ordinances created by some regulatory* [sic] with regard to broadcast content."

Declaration of Melissa R. Smith ("Smith Decl."), Ex. A at 39 (emphasis added).[1]  The applicant also stated that these limitations are material to the claims: "to emphasize the importance of the inventive application of local broadcasting regulations to advertisements in time-shifted programmes . . . claim 1 has been amended to limit its scope to local broadcasting regulations which forbid the showing of certain advertisements at certain real times of day." *Id.* at 18-19. These statements further demonstrate SafeCast's failure to allege infringement of material claim limitations. *See Vervain, LLC*, 2022 U.S. Dist. LEXIS 54, at *14-15 (noting that "materiality of the claims" requires "a higher level of detail in pleading infringement").

Courts, including in this district, routinely grant motions to dismiss for failure to state a claim where the plaintiff fails to sufficiently plead how an accused product infringes limitations of asserted claim(s). *See, e.g.*, *Mesa Digital, LLC v. Cellco P'ship d/b/a Verizon Wireless*, No. 6:21-cv-01020-ADA (W.D. Tex. July 26, 2022) (Dkt. 33) (granting motion to strike or in alternative dismiss an amended complaint that failed to cure pleading deficiencies for multiple limitations (Dkt. 13, 25)); *Vervain, LLC*, 2022 U.S. Dist. LEXIS 54, at *9 (granting motion to dismiss where complaint failed to sufficiently plead factual allegations to support a reasonable inference that the accused product practiced the claimed "hot blocks" and "data integrity test" limitations); *De La Vega v. Microsoft Corp.*, No. W-19-CV-00612-ADA, 2020 U.S. Dist. LEXIS 116081, at *15-17 (W.D. Tex. Feb. 7, 2020) (dismissing direct infringement claims for failure to allege "coupling" limitation met by accused products); *Ruby Sands LLC*, 2016 U.S. Dist. LEXIS 83897 at *11-12 (dismissing direct infringement claim "constructed upon a fatally flawed foundation" as no factual

---

[1] The Court can take judicial notice of the prosecution history of the asserted patent in resolving a Rule 12(b)(6) motion.  *See Vervain, LLC*, 2022 U.S. Dist. LEXIS 54, at *15 n.2 (taking judicial notice of prosecution history).  Microsoft's request for judicial notice is filed concurrently with this motion.

allegations "even remotely suggest[ed]" that the defendant sold the product that was alleged to meet the claim limitation); *Traxcell Tech. v. AT&T Corp.,* No. 2:17-cv-00718-RWS-RSP (E.D. Tex. Mar. 29, 2022) (Dkt. 520) (finding the case exceptional in part due to Traxcell's "continued reliance on unsupported infringement theories").

Likewise, here, SafeCast's complaint is insufficient because it fails to identify how certain claim limitations are met by the accused products. Its allegations do not identify any "broadcasting authority" or any "local broadcasting time regulation" to support direct infringement by Xandr's platforms, nor any "programme supply means to supply broadcast digital video/audio programmes." The only purported support SafeCast cites as meeting the "local broadcasting regulations laid down by a broadcasting authority" limitation—a list of private industry groups—is insufficient to show that Xandr's platforms automate any compliance with any local broadcasting regulations. *See Ruby Sands LLC*, 2016 U.S. Dist. LEXIS 83897 at *11-12 (dismissing claims where plaintiff argued claim limitations were met by mobile device but made "no factual allegations that even remotely suggest[ed] that [defendant], a bank, makes uses . . . or sells mobile devices"). Similarly, SafeCast's allegations that Xandr's customers supply video/audio programming are also insufficient to show how *Xandr* itself meets the "programme supply means" limitation of claim 1. *See id*. Thus, SafeCast's infringement claim against Microsoft should be dismissed because it is implausible.

### III. DISMISSAL WITH PREJUDICE IS WARRANTED AS ANY AMENDMENT WOULD BE FUTILE

SafeCast's own omissions and allegations reflect its recognition that Xandr does not supply programming and is otherwise not a broadcasting service regulated by any broadcasting authority. Thus, SafeCast cannot correct its flawed allegations. Any amendment would be futile, and the complaint should be dismissed with prejudice. *See Burke v. Ocwen Loan Servicing*, 855 F. App'x

180, 187 (5th Cir. 2021); *Valdez v. Victory Med. Ctr. Southcross*, No. SA-16-CA-1016-FB, 2016 U.S. Dist. LEXIS 202250, at *13 (W.D. Tex. Dec. 12, 2016).

Additionally, by filing this complaint against Microsoft, SafeCast seeks multiple bites at the apple.  First, SafeCast already accused Xandr's platform in a complaint filed three months earlier against AT&T, asserting the '302 patent. *See SafeCast Ltd. v. AT&T Corp.*, No. 6:22-cv-00676-ADA-DTG (W.D. Tex. Jun. 27, 2022) (Dkt. 1-1, Ex. B) (including citations to https://about.att.com/story/2019/xandr_addressable_enhancements.html).  Second, as SafeCast notes, Microsoft acquired Xandr from AT&T in June 2022, but SafeCast relies on Xandr's website and articles predating that acquisition, and still fails to plausibly allege that Xandr "broadcasts" or supplies any programming.  *See* Claim Chart.  Third, SafeCast received prior notice of deficiencies in its application of "local broadcasting regulations" when Google twice moved to dismiss SafeCast's complaint on that basis.  *See SafeCast Ltd. v. Google LLC*, No. 6:22-cv-00678-ADA (W.D. Tex. Sept. 6, 2022) (Dkt. 20); *SafeCast Ltd. v. Google LLC*, No. 6:22-cv-00678-ADA (W.D. Tex. Sept. 29, 2022) (Dkt. 24).  Accordingly, SafeCast has had ample opportunity to plead adequate infringement claims against the Xandr platform, but failed to do so.

## CONCLUSION

For these reasons, Microsoft respectfully requests dismissal of SafeCast's complaint in its entirety, with prejudice.

Dated:  December 1, 2022

Respectfully submitted,

*/s/ Melissa R. Smith*
Melissa R. Smith
State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
Fax: (903) 934-9257
melissa@gillamsmithlaw.com

11

Jonathan J. Lamberson (*pro hac vice pending*)
Henry Huang (*pro hac vice pending*)
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA  94306
Tel:  (650) 213-0300
lamberson@whitecase.com
henry.huang@whitecase.com

Lauren Kuehn Pelletier *(pro hac vice pending)*
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 819-8200
lauren.kuehn@whitecase.com

*Attorneys for Defendant Microsoft Corporation*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on December 1, 2022, I electronically filed this document with the Clerk of Court via the Court's CM/ECF system which will send notification of such filing to all counsel of record, all of whom have consented to electronic service in this action.

/s/ *Melissa R. Smith*
Melissa R. Smith
Texas Bar No. 24001351